Mrs. Johnson, whenever you are ready. Good afternoon, your honors. May it please the court. My name is Erin Johnson, and I represent the defendant in this case, Mr. Nathan Reed. Mr. Reed was convicted after a jury trial of public indecency and sentenced to three years in the Illinois Department of Corrections. This is a direct appeal from that jury trial. Now, I'd like to focus on the first issue in our brief, which is that the state failed to prove Mr. Reed guilty beyond a reasonable doubt of public indecency because there was no evidence of lewd exposure, which is a required element of public indecency as charged in this case. I'd like to focus on this issue not only because it's the first issue in our brief, but also because if this court is persuaded that the evidence is insufficient as a matter of law, I believe there's no need to address the other issues we've raised. Now, the facts in this case were undisputed, and the fact that Mr. Reed's penis was covered at all times was undisputed. The state conceded that point in their closing argument at trial. The evidence in this case was that Mr. Reed was sitting on a park bench wearing khaki pants and a white t-shirt with a button-down shirt that was open and that through his t-shirt, the state's witness could see the outline of the top of his erect penis. But the state's witness testified then at trial that she testified multiple times that Mr. Reed was covered at all times. All that she could make out was the outline of the top of his penis. She specifically said she could never see skin. And again, she multiple times said he was completely covered. And if something is covered, it cannot by definition be exposed. And that's the issue in this case. Where there was no evidence of exposure, there can be no wound exposure. So if she can identify the object, and it's usually not one that is identifiable in that way, couldn't that be conceived as exposure? I think because exposure is not defined in the statute, if we look at the common ordinary definition of exposure, it encompasses the idea of being not, the definition from the dictionary is not protected or covered. That's the definition of exposed. And we look at the cases such as we cited in our brief, people being garrisoned, they talk about private parts which are normally kept covered in the presence of others. So I think when you look at not only the dictionary definition, but what some cases the Supreme Court has adopted from the Supreme Court of Washington, the idea of exposed is the opposite of covered. So where he was covered with his clothing, even if you make out the outline of his body parts, that's not an exposure. Because then anyone who's wearing tight clothing whose parts were showing, if a woman's breasts were showing or her nipples were showing, that could be construed as exposure. But does it have to do with the nature of the material that is covering? What if his private part was covered with a piece of plastic, just like this, in a sense like a store case where someone stood behind a window which you could see through? Does that make a difference? Would you say because there's material on top of it, it's covered regardless of whether you can see through it or not? Certainly I think that would be a different factual scenario than what we have here. If something was entirely clear like a piece of saran wrap, I don't know if we could say whether, but again, that's not the factual scenario we have here. But you're asking us to define the word. Define the word covered. In other words, isn't this word covered ambiguous? I guess that's what I'm trying to get at. So you're assuming covered means there's something over it and you can't see through it, I believe, is what you're trying to say, but something can be covered and you can see through it. So is that where we stop or do we have to look at the intent of the statute? Well, I think certainly whenever a term is not defined in the statute, we should look at its plain and ordinary meaning. And like I'm saying, obviously the definition is not protected or covered. Where covered might be ambiguous, still we have to go back to the idea of exposure. Was something exposed? And I think the common understanding of the term exposed, if someone were to walk in here right now and say a woman exposed her breast to me, we would all commonly understand that to mean that she lifted up her top and maybe pulled down her top and you saw her bare breasts. We wouldn't understand that to mean that she pulled her clothing tightly over her breast. How would that be different than this? Well, I guess that's my point, is that if a woman was wearing a very tight T-shirt and her nipples were showing, that would be lewd exposure. And in the same way that just because you can see the outline of someone's body parts, it doesn't necessarily mean that they're exposed, because in that way anyone whose body parts are being shown through their clothing is committing an exposure. And certainly when you look at our common understanding of exposure, it would not be covered by clothing. So I think that is what we need to look at here. And I guess when you look at that Garrison case, the definition that they adopt in the Supreme Court of Washington, they talk about private parts being covered. In this case, his private parts were covered. So I think that if we look at how the Supreme Court has interpreted lewd exposure, our client's conduct didn't constitute a lewd exposure in this case. Well, but he made his private parts known to the sense of the woman who was walking by, right? I mean, she could see clearly the outline. And, again, if we look at the intent of the legislature, isn't this the type of conduct the statute was designed to prevent? Well, I would actually say that not this particular section. There's two sections to the public indecency statute. There's A2, which was charged in this case, which contemplates a lewd exposure. But there's also A1, which is sexual conduct. Now, certainly in this case, if somebody were to be fondling themselves in public, even through their clothing, that could be sexual conduct. But that's not charged here. What's charged here is lewd exposure. So I would agree that the legislature would be intending for people not to be, you know, pleasuring themselves in public, but that would be under a different section than what was charged in this case. What if exposure means to make known, if that's a common definition as well? Didn't he then make known that particular part without actually uncovering it? Well, and I guess that comes down to that. I don't know that we have the facts on that in this case. I mean, the testimony was that she could see the outline of his penis. The testimony from the state's witness was that she was walking through this park, and she often looks at this bench where people sometimes she knows are sitting, and she saw the defendant, and then she looked down at his crotch and saw the outline of his penis. There's nothing, I guess, other than her testimony that he was touching his penis. There's nothing. We have no evidence that he was – there was any intent there. I guess that would be inferring an intent that we don't have evidence of, that he was trying to make this specific person see his penis. She walks along and happens to see the outline of his penis, but I think that's a different factual issue than what we have here. Did he speak to her to call her attention to him? I believe that in the testimony he said hello and she nodded or something to that effect. But she had said that she was looking at the park bench as she was walking up to it because she normally waves and says hello to whoever's sitting there because normally it's some friend of hers. But again, I would disagree with the idea that exposure means to make known. I know the state cited that in their brief, but that's actually an example, and when you look at the example the dictionary gives to make known, they were talking about a politician who's seeking a lot of exposure. The other examples include like somebody dying of exposure because they were out in the cold. I certainly don't think that the legislature meant for there to be a lewd, you know, someone being out in the cold and dying of exposure. I mean, obviously the context matters, so you can't just take any example and say, well, since this is the way the word is used, that must be what it means. I think you have to give the word its common and ordinary meaning. That would make sense in the context, and I think given the context of lewd exposure, it does need to encompass something being uncovered because if it didn't involve removal of clothing, then there's a myriad of ways innocent conduct could be an exposure. Certainly like baseball players who, you know, grab their crotches during a baseball game could be committing a lewd exposure under that conception. They're usually wearing some other item of clothing that would prevent that. Well, but in this case, I guess the defendant was wearing clothing that completely covered his body. So in that way... It doesn't sound like he was wearing an athletic cup that had to be readjusted. Well, true, but he was wearing, I guess, that's true, but he was wearing clothing. I guess any, so if we want to say that anyone who touches their private parts through their clothing could be considered to be committing a lewd exposure, certainly that doesn't seem to be what the legislature was intending. And certainly when you look at that Garrison case, they're talking about a lascivious exhibition of private parts that are only kept covered. So even with the way the Illinois Supreme Court has interpreted it, it clearly encompasses some sort of uncovering, bare skin showing for that particular section. And that's, again, what I would point out is there are two sections to the public indecency statute and only one was charged in this case. Because as we pointed out in our brief, there is, although there is evidence that Mr. Reed was fondling his penis, there was testimony that he was touching it, that wouldn't be lewd exposure. There's a separate section for that. And I think the Newman case that we cite in our brief makes it clear that touching yourself is not the same as lewd exposure. The first district said masturbation in and of itself is not lewd exposure. So just the fact that someone is touching themselves under their clothing in the first district's reasoning is not an exposure. So I think the issue here is the way this particular offense was charged under A2 was a lewd exposure. The state did not present any evidence that Mr. Reed was exposed. So where the state, and the state says in their closing argument that he was covered the entire time. So if they conceded that he was covered, his conduct doesn't meet the definition of an act of lewd exposure. And in that way, I believe the state did fail to prove Mr. Reed guilty of public indecency beyond a reasonable doubt, because all the evidence was that his penis was covered. And for that reason, we've asked the court to vacate his conviction on that basis. If you want to talk about your next issue, this would be the time. Okay. Briefly, if there's no other questions on the first issue, if this court is not persuaded that the evidence was insufficient as a matter of law, then we still believe Mr. Reed's conviction should be vacated and the case remanded for further proceedings, because the court in this case failed to hold a proper fitness hearing. And the state has, I guess, already conceded that point that the fitness hearing was improper in this case. The only issue is whether it should be retrospective or prospective. And can you elaborate on that? If it is sent back, then what does the state feel is appropriate? Well, the state feels that a retrospective fitness hearing is appropriate. However, we disagree. I would be arguing that this needs to be a prospective fitness hearing followed by a new trial.  And I think if you look at Neal, which is a Supreme Court case, our Supreme Court clearly states that if more than a year has passed since the trial, a retrospective fitness hearing will be insufficient to protect a defendant's due process rights. Now, here it's been two years. Now, I would note that, obviously, in Neal, the court went on to grant a retrospective fitness hearing, even though it had been 15 years. But what's essential, and what I think the state didn't construe properly in their brief, is that in Neal, that was under an older fitness statute that only dealt with psychotropic medications. And the court in that case specifically said that the effects of the medication are fixed, and when they had the medical history of the defendant, they could determine what the effects of the medication would be at any point in time. That's not the case we have here. This has nothing to do with the psychotropic medication issue from Neal. But Neal still keeps that bright-line rule of a year. And here, where it's been over a year, and the defendant demanded a hearing in front of a jury, which he's certainly entitled to under the statute, and there was no evidence stipulated to in this case. So there's no guarantee or any real idea that we could have a retrospective fitness hearing if we were using the evidence from two years ago, and that a jury would be able to effectively determine whether or not Mr. Reed was fit two years ago. I think even if you look at a more recent case from this court, Keeple v. Cook, which we cited in our brief, in Cook, this court granted a retrospective fitness hearing, but it was specifically stated in that opinion that all the evidence had been stipulated to. So all that was left to do was for the court to make its determination. But in this case, we don't have any stipulations, and the defendants demanded a jury, so there's no realistic way that a retrospective fitness hearing could accurately determine his fitness as of two years ago. And certainly to ask a jury to do that, we just don't have any way of ensuring that would be a fair process. Why not? Well, certainly there's been no stipulation. There's a report from two years ago, but there's been no stipulation to any evidence. There's no representation as to whether or not that same doctor would be available to testify at a further hearing. Assuming he were available to testify? I still think there would be the problem of the defendant having the ability to put on his own case, so a jury would be faced with a two-year-old evaluation and then evidence as of today, because the defendant would be presenting to the jury evidence as of right now. If he were to testify or anything else he would present, it would be current. So I don't think it would be current. Why would it be current? Well, certainly if the defendant's testifying today, I don't know how you could expect that he would be able to accurately assess his mental state. If he were called to testify? If he decided.  Of course. But he could testify at the fitness hearing as to his fitness. He could present some other expert, but we don't know what the evidence would be, because there was no hearing two years ago. So it's different than the scenario where everyone's stipulated and we know exactly what the evidence would be. Well, there was a report ordered and a report given by the doctor. Part of the problem was how the trial court handled it and the attorneys, in terms of motion for summary judgment and not honoring the right to a jury trial. But if it were sent back for a retrospective hearing in front of a jury, they would have the report, would they not? And the doctor could testify as to what was in his report, presuming he's available. They would presume the doctor's available and they would presume that the report would come into evidence and that also presumes, I guess, that that's the only evidence. But it was the only evidence then. And if it's sent back for retrospective, why wouldn't it be sufficient? Well, I guess I'm saying because the defendant wasn't given an opportunity to present any evidence, that it couldn't be retrospective. How is he going to hire an expert today to testify to what happened two years ago? Well, that's why I'm saying he wouldn't be able to. Well, I know, but I mean, it's not what his state of mind is today. It's what his state of mind was more likely in that vicinity of the time. And I tend to disagree with you a bit that there was no stipulation. The public defender, the defense attorney, is the one who made the motion for a summary judgment. And I think what I argued in my brief is that that was completely improper. I mean, obviously she's the attorney who the court appointed, but she was acting against her client's interest in that case. And I think it's entirely – there's nothing that says the public defender can ask for summary judgment in favor of the state. And that's what she did in this case, is she – Or maybe it was in favor of what she believed to be justice. Well, but the statute requires that once a bona fide doubt is raised, the state has to prove the defendant fit, and then the defendant will be able to present their own evidence. In this case, the public defender essentially asked for judgment in favor of the state because the state has the burden of showing the defendant was fit. If they had just allowed the witness to go up and testify and then let it go to the jury, then we'd have no problem. But by asking for judgment in favor of the state, there's no case I can find that says that's appropriate. And certainly, that didn't give the defendant any opportunity to present any counter evidence that he might not be fit at that time. And this is, I think, opposite of the Holt case where the court said in a limited context where an attorney believes a defendant is unfit, they could ask for a directed verdict. But the directed verdict was a verdict against the state, a verdict – or a finding – I'm sorry – a finding of unfitness. But this is the opposite. She believed the client to be fit, so she asked for judgment in favor of the state without giving her client an opportunity to have his hearing. So I think that procedure is completely improper. And for that reason, the only thing to do would be to have a fitness hearing that's prospective, that's current, because we can't determine what his fitness would have been two years ago. Because that entire procedure was lost, there was no opportunity for the defendant to give evidence, and there's no way that a jury now could make that determination. All right. And just for purposes of this question, let's assume that he is found fit in a prospective hearing, and then it goes to trial, and a jury finds him guilty again. What's going to happen? Practically? No, for real, what's going to happen? If the jury finds him guilty again, I mean, he's already served the maximum sentence, so that would be the end of… Maybe not. Maybe he had problems while he was in custody, and he can be resentenced again. Not that I'm aware of, but certainly I guess that's a possibility, but that's… It's happened more than once here. And we call those cases sort of be careful what you ask for. Well, that's certainly something that I have discussed with Mr. Reed before raising that in this appeal. And I guess that would be why my larger argument goes back to the sufficiency of the evidence, because if, as we believe, this was not an exposure, there was no evidence of exposure, his conviction should be reversed and there's no reason to go back and do anything with the fitness, because if the state's evidence as a matter of law couldn't sustain the charge, there's no reason the state would get another bite of the apple. So we'd be asking this court to reverse Mr. Reed's conviction on the basis that the evidence was insufficient. Thank you. Mr. Bernard? Good afternoon, Your Honors. I guess I'll start with the second issue first. There's no problem with the retrospective hearing because we have the medical report. Presumably the doctor who wrote that report is still available. Defense counsel can be called in to testify to his observations of the defendant. The assistant state's attorney can be called in to testify, and the judge can be called in to testify to their observations of the defendant. So I see no problem, especially in this short period of time, of having the retrospective hearing. Doing otherwise would just put form over substance. Well, how do we deal with the one-year limit that might be set or might be considered by Neal? Yeah, I don't think they set a one-year limit. They said to be careful after that one year and that we have to look. And, again, it's a balancing test that this court makes all the time. So I don't really think if this was maybe eight years down the line, but this two years is relatively fresh in everyone's mind, and I think this is a balancing test this court is well able to do and to prevent this form over substance, which is the whole, I think, proposition of Burgess Supreme Court discussing that. Now, as to the first issue, you know, the definition is, recidivist exhibition of those private parts of the person with instinct of modesty, human decency, or common propriety, which is a body part that is customarily kept covered in the presence of others. When we look at that definition and then we look at the facts of this case, and I don't think there's anyone in this courtroom, if they're being honest, or outside this courtroom, would not think that what the defendant did was a lewd exposure. The victim testified that he had this T-shirt tightly pulled around his erect penis, which makes a difference. I've watched a lot of baseball games, I've never seen a baseball player showing his erect penis. That's the difference here. The difference here also is the fact that he was doing it for the express purpose to arouse or satisfy his sexual desire. That's the part that's really important here. I mean, it's not just that he was exposed, but he was doing it for his sexual desire. When the victim walked up to him, she stated, he made this creepy, gave this creepy hello to her, and then looked down, and he was actually, you know, moving his hand up and down on his private part. That is lewd exposure. That is exposing yourself, it's beyond, you know, instinctive modesty. Certainly it was an exposure to this victim, and certainly it was an exposure to the jury. The common sense definition here, we don't need any other definition. The legislature did not state, you know, they didn't put lewd exposure in the definitional section of the statute. Pretty much any adult would know what a lewd exposure is, especially when you talk about the express purpose of arousing or, you know, expressing a sexual desire. And I think that's where we have to connect this. There's nothing, there's no case law out there that says that skin has to be exposed. If that was true, sure, you know, a bare breast might be lewd exposure, but it isn't. In this case, the defendant clearly wanted the victim to see what he was doing, and it was arousing him, obviously. I don't know what else to say. I think it's just, it's so obvious to, I think, most people that, like I said, if we took a poll, no pun intended here, but, you know, if we asked everyone's opinion, I don't think we should do that either. We should make, this would be a lewd exposure. Well, I mean, exposure has some common definitions. And the main known part is kind of the interesting one that might apply here, especially when we think about what the purpose, or I suspect what the purpose of this statutory authority is, is to keep certain places, like public places, where conduct may reasonably be expected to be viewed by others, safe. Exactly. And is, you know, so then do we have to be as precise as you can only make something known if it is uncovered, or can you make something known if it's clearly obvious what it is without being uncovered? I think here we clearly know what this is and why this person was doing it, and it certainly was lewd. Like I said, there is no case locker that says skin has to be exposed. The defendant talks about the Newman case. That case wasn't really even close to our case here. That was based more on charging. They didn't even charge a material element. And the court just said, well, you know, we can't even say masturbation is lewd because they haven't charged it. So I think it's completely different than the case at bar. But, no, I think we have to depend on the jury and the common sense of the jury to decide what lewd exposure is, and I think that's what the legislature was doing when they didn't have a specific definition in the statute for it. Well, in fact, the jury did ask a question to that issue, correct? Does skin have to be shown? And the judge must have taken that as a matter of fact because he said you have all the information and you have the facts. He didn't offer any definitions, correct? That's my understanding right now, but my memory is not perfect on that, Judge, so I don't want to comment further on that. But I think it's clear that the defendant here intended to lewdly display his private part, again, for the express purpose to arouse his sexual desire. If there's no other questions, Your Honor. Why doesn't this more clearly fall under the other section in the statute? Why isn't it sexual conduct? Why isn't it sexual conduct as opposed to exposure with intent? I think it's both. And I think probably we could have charged either or both, but I don't think that keeps us from proving that this was approved to be lewd exposure. It's certainly less sexual conduct, but I don't think that makes a difference, Your Honor.  Thank you, Your Honor. Ms. Johnson. To the question that was just asked of the State, I do think that, as I stated in my opening, my first argument is that this could be more properly charged under A1, which is not charged in this case. And I think that also satisfies the question about isn't this the type of conduct the legislature was trying to prohibit. Certainly, if we're concerned with people fondling themselves in a public park, that is prohibited by law, just not the law that the defendant was charged with in this case. And that's really the issue here, is that the defendant was charged with lewd exposure and the State didn't prove an exposure. And I think counsel, by saying that everyone could understand this, it's disingenuous. The jury didn't understand it. When the jury was given lewd exposure as an instruction, they asked, does skin have to be exposed? And they were told by the judge that they had all the law. And now, certainly, I think that this is actually a question of law and not a question of fact. It's not an issue that I didn't raise it that way because I think no jury could find the defendant guilty under these facts. It doesn't really matter how they were instructed. This is a question of law. And I think, as in our brief, we've cited the Diggins case. This is just like defining what a case is. We're defining what exposure is here. So you're saying skin has to be exposed. You're saying that because his penis was covered by the T-shirt and by also saying that even if it was covered with see-through plastic, neither was a lewd exposure. I'm saying the first part. I'm not saying that if it was saran-wrapped that that's necessarily not a lewd exposure. But certainly, if someone's clothing covered them, they're not exposed. And I think that it has to have some – I think when you look at the dictionary definition as well as the definition of garrison, it's very clear that the common understanding of exposed is the opposite of covered. And I guess the saran-wrapping is tricky into what we consider to be covered. But certainly, that's not the factual scenario we have here. Mr. Reed was wearing clothing, opaque clothing. So there's no issue as to whether or not he was covered. He was. And the state admitted that in their closing argument. So I think that here, this was an issue of law. And I think that as a matter of law, the state did not prove exposure. And for that reason, we'd be asking that this Court reverse Mr. Reed's conviction. Thank you. All right. Thank you, counsel, for your arguments. We'll take the matter under advisement, issue a decision in due course. We will stand in recess to prepare for our next hearing.